Clarice J. **ABERNATHY, Plaintiff,**

v.

Ralph G. **ERICKSON, a/k/a Pete Erickson; Wayne E. Erickson; Mark Scott Erickson; and Ralph G. Erickson, Wayne E. Erickson and Mark Scott Erickson, d/b/a Prairie Lake Lodge and Hunt Club, a Partnership or Joint Adventure, Defendants.**

No. 86 C 7092.

United States District Court, N.D. Illinois, E.D.

April 10, 1987.

Craig M. Armstrong, Armstrong, Surin & Engels, Ottawa, Ill., appeared on behalf of plaintiff.

Terrence J. Goggin, Steven D. Pearson, Goggin, Cutler & Hull, Chicago, Ill., appeared on behalf of defendants.

Daniel J. Bute, Cantlin, Bute & Deobler, Ltd., Ottawa, Ill., appeared on behalf of interpleader.

## ORDER

BUA, District Judge.

Two motions are before this court. First, defendants bring a motion to dismiss plaintiff's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Second, petitioner Kenneth Votava brings a motion to interplead. Plaintiff's action is based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* Jurisdiction and venue are conferred on this court by 18 U.S.C. §§ 1964(c) and 1965(a). For the reasons stated herein, defendants' motion to dismiss plaintiff's amended complaint is granted. Votava's motion to interplead is moot.

## FACTS

In 1955, plaintiff Clarice J. Abernathy and defendant Ralph G. Erickson, then husband and wife, obtained title in joint tenancy to an undivided half interest in 80 acres of rural land. Ralph Erickson's brother, co-defendant Wayne E. Erickson, owned the remaining half interest. Together they developed this land into the "Prairie Lake Lodge and Hunt Club" ("Prairie Lake Lodge"). In 1959, plaintiff and Ralph Erickson entered into an agreement which terminated plaintiff's interest in the property. Nevertheless, in 1978, Wayne Erickson, Ralph Erickson, and plaintiff entered into an agreement to sell the Lodge property for $721,000.

Plaintiff and Ralph Erickson were divorced before the buyers made their final payment. Ralph Erickson and plaintiff entered into a post-divorce property settlement in 1979. The settlement provided that plaintiff and Ralph Erickson retain whatever rights and interest they had in the sale contract for Prairie Lake Lodge.

On January 24, 1981, the buyers of the Lodge defaulted. Shortly thereafter the co-defendants repossessed the property and resumed its operation. Ralph Erickson

proceeded to deed his property interest to his nephew Mark Scott Erickson. Plaintiff then petitioned the Circuit Court of LaSalle County to overturn the couple's property settlement. Plaintiff alleged that Ralph Erickson had failed to reveal certain property interests and fraudulently misstated the extent of his interests. In September 1983, the court dismissed plaintiff's claim as "wholly without merit." However, the trial court stated that plaintiff still had a one-fourth interest in the Prairie Lake Lodge property.

In 1985, Mark Scott Erickson reconveyed his one-half interest in the Lodge to his uncle, Ralph Erickson. Finally, on May 9, 1985, Prairie Lake Lodge was sold. Plaintiff believes she did not receive certain proceeds entitled to her from the sale of the property and this litigation ensued.

## DISCUSSION

The plaintiff's six-count amended complaint presents four federal RICO counts and two pendent common law counts based on fraud. The defendants move to dismiss the RICO claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure claiming plaintiff failed to state a claim upon which relief can be granted. Defendants then move to dismiss the pendent common law claims based upon a lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

Defendants present four arguments in support of their motion. They argue that plaintiff lacks standing to assert her claims, that the RICO claims are time-barred by the two-year statute of limitation, that plaintiff failed to properly plead a RICO claim, and that plaintiff's amended complaint is an impermissible collateral attack on a final judgment of the Circuit Court of LaSalle County.[1]

Plaintiff refutes these arguments. Plaintiff believes that her one-fourth interest in Prairie Lake Lodge confers standing on her to bring her claims. Next, plaintiff maintains that the very last predicate act

of the defendants is what triggered the running of the statute of limitation and that act was within the limitation period. Third, plaintiff contends that she satisfied the pattern requirements of her RICO claims. Last, plaintiff argues that her complaint is not a collateral attack of the earlier fraud judgment, but rather is a RICO claim in and of its own right.

### I. *Standing*

■ Defendants argue that plaintiff lacks standing to assert the instant claim. Defendants contend that plaintiff has no personal stake in the instant controversy because she conveyed her entire interest in the Prairie Lake Lodge to Ralph Erickson in 1959. Defendants believe this conveyance extinguished all her rights in the property.

Defendants also argue that plaintiff received no property interest in Prairie Lake Lodge as a result of the post-divorce property settlement. Defendants contend that the property settlement granted plaintiff a contractual right to retain only her interest in the first sales contract for Prairie Lake Lodge. Defendants suggest that plaintiff had no rights in the underlying property, but only rights in the proceeds generated from the property's sale. Finally, defendants implicitly suggest that plaintiff's interest in the property terminated when the buyers defaulted on the sale contract.

In order to have standing in a federal court, a plaintiff must show more than a violation of law. *Allen v. Wright*, 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984). A plaintiff must show the kind of actual or threatened injury that would support a lawsuit under traditional principles of common law or equity. *People Organized for Welfare & Employment Right v. Thompson*, 727 F.2d 167, 171 (7th Cir.1984). Indignation that the law is not being obeyed, sympathy for the victims of that disobedience, a passionate desire to do one's legal duty—none of these emotions, however laudable, sincere, and intense, will

---

1. This court need not consider defendants' impermissible collateral attack argument in light of this court's decision to dismiss the amended complaint on other grounds. If compelled, this court would probably reject defendants' argument.

confer standing. *Id. See Cronson v. Clark,* 810 F.2d 662, 664 (7th Cir.1987).

The U.S. Supreme Court defined the requisite interest a party must have to form a basis for standing in *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). In *Morton,* the Court held that

> ... the question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy' (citation omitted) as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution' (citation omitted). *Id.* at 732, 92 S.Ct. at 1364.

This court rejects defendants' argument. This court believes that plaintiff's amended complaint sets forth her personal stake in the outcome of this lawsuit. Paragraph 13 states that the property settlement entered into between plaintiff and Ralph Erickson reserved to plaintiff her undivided interest in the Prairie Lake property. This assertion alone is sufficient to confer standing, since a well pled fact of financial interest must be taken as true for purposes of a motion to dismiss. *See Mathers Fund, Inc. v. Colwell,* 564 F.2d 780, 783 (7th Cir.1977). In sum, plaintiff alleges that her property rights were not limited to the proceeds from the sale of the property. Plaintiff argues she had a one-fourth interest in the property and that the interest survived the buyer's default.

In addition, plaintiff presents matters outside the pleadings. Plaintiff refers to a judgment order issued by Judge Zwanzig of the Circuit Court of LaSalle County. That order states that plaintiff "has a one-fourth interest in the Prairie Lake premises." This order was entered twenty-four years after the transaction in which plaintiff allegedly conveyed her entire interest in the property to Ralph Erickson. This order was also entered after the parties entered into their property settlement. Consequently, the Circuit Court order implies that the property settlement between plaintiff and Ralph Erickson granted plaintiff a one-fourth interest in the Prairie Lake Lodge despite the fact plaintiff con-

veyed her entire interest to Ralph Erickson in 1959. This property interest is sufficient to confer standing.

## II. *Statute of Limitations*

█ The Seventh Circuit recently adopted a two-year statute of limitation period for civil RICO claims. *Tellis v. United States Fidelity & Guaranty,* 805 F.2d 741 (7th Cir.1986). The issue before this court revolves around the date the limitation period begins to run.

Defendants argue that the two-year limitation period begins to run once the underlying fraud is first discovered. Defendants contend that plaintiff's RICO claims arose and were discovered more than two years prior to the filing date of the Complaint. Defendants maintain that plaintiff was aware of Ralph Erickson's intent to deprive plaintiff of plaintiff's interest in the Lodge in 1981, four years before the Complaint was filed. Defendants submitted a copy of plaintiff's deposition wherein plaintiff allegedly admitted that she had a "gut feeling" that Ralph Erickson was attempting to deprive her of her proceeds from the sale of the Lodge to the sellers. Consequently, defendants believe plaintiff's claim is time-barred and should be dismissed.

Plaintiff responds with an uncompelling counter-argument. Plaintiff's total argument consists of the following two sentences:

> [S]ince the plaintiff's RICO claim is founded upon a transaction that is alleged to have been accomplished on May 9, 1985, we see no need to add to what is set forth in Part A above [standing]. Clearly, the plaintiff's RICO complaint was timely filed.

Plaintiff's cursory presentation compels this court to look beyond plaintiff's memorandum while considering the instant motion.

In general, the two-year limitation period for a RICO claim begins to run when a plaintiff either discovers or should have discovered that he has sustained an injury. *Bowling v. Founders Title Co.,* 773 F.2d 1175 (11th Cir.1985). In *Bowling,* the Eleventh Circuit rejected the district court's jury instruction that the statute of limita-

tion begins to run after the commission of the last predicate act. Instead, the *Bowling* court held that a RICO claim accrues when a plaintiff knows or should know that he has sustained an injury. The court's holding in *Bowling* follows the rule established in both the Eighth and Ninth Circuits. *See Alexander v. Perkin Elmer Corp.*, 729 F.2d 576 (8th Cir.1984) and *Compton v. Ide*, 732 F.2d 1429 (9th Cir. 1984).

In the instant case, defendants' scheme to deprive plaintiff of her property interest in Prairie Lake Lodge began in 1981 and ended in 1985. Plaintiff knew on March 31, 1982 that Ralph Erickson intended to deprive plaintiff of her property interest in Prairie Lake Lodge. Plaintiff asserted this claim in her "Amended Petition for Relief from Final Judgment" before the Circuit Court of LaSalle County. Plaintiff may have known defendant's intention as early as 1981 as evidenced by her assertions in her original "Petition for Relief of Final Judgment."

This court finds that defendants engaged in one scheme comprised of multiple acts. These acts were designed to deprive plaintiff of her property interest in Prairie Lake Lodge. Plaintiff filed her initial federal RICO complaint on September 19, 1986. Plaintiff's filing date is approximately three and one-half years after she knew Ralph Erickson intended to deprive her of her property interest in Prairie Lake Lodge. Consequently, plaintiff failed to file her complaint within the two-year limitation period and thus is time-barred.

### III. *A Pattern of Racketeering Activity*

Defendants argue that plaintiff failed to state a RICO claim. Specifically, plaintiff allegedly failed to plead the necessary pattern of racketeering activity and to plead the requisite relationship of this pattern to the alleged scheme of defendants to defraud plaintiff. In contrast, plaintiff contends she satisfied her burden of alleging defendant engaged in a pattern of racketeering activity.

This court finds that plaintiff failed to properly plead her RICO claims under § 1962(a) through (d). Plaintiff failed to set forth the requisite pattern of racketeering activity required for each RICO claim.

Section 1964 of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, enables a private plaintiff to bring a civil rights suit based on a violation of § 1962. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In such a case, a plaintiff acts in the capacity of a private attorney general.

A violation of § 1962(a) requires the receipt of income from a pattern of racketering, and the use of that income in the operation of an enterprise. *Masi v. Ford City Bank and Trust Co.*, 779 F.2d 397, 401 (7th Cir.1985). A violation of § 1962(b) requires a person engaging in a pattern of racketeering activity to acquire or maintain an interest in an enterprise engaged in interstate commerce. A § 1962(c) violation requires a person employed by an enterprise to participate in the conduct of that enterprise's affairs through a pattern of racketeering activity. *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Finally, a § 1962(d) violation requires a person to conspire to violate any subsection of § 1962. In all sections, a crucial element of the claim is the existence of a pattern of racketeering activity. A pattern of racketeering activity requires at the barest minimum two predicate acts of racketeering activity. 18 U.S.C. § 1961.

The Seventh Circuit set forth the pleading requirements to properly allege a pattern of racketeering activity in *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir. 1986). In *Morgan*, defendants made false representations which induced plaintiffs to invest money and pledge security in a speculative venture. The defendant bank agreed to lend money to the participants in the venture. In return, plaintiffs were persuaded to enter into a land trust agreement conveying a beneficial interest in their home to the bank. Two years later, when the venture defaulted, the individual defendants formed a new corporation and with the bank's consent purchased the initial venture's remaining assets. The same scenario was repeated two years later to

form another new corporation. Mailings were made in connection with the initial loan arrangement and the creation of both corporations. When this third corporation failed, the defendant bank foreclosed on plaintiffs' home.

The *Morgan* plaintiffs instituted an action alleging a RICO violation. Defendants moved to dismiss for failure to plead a pattern of racketeering activity. The Seventh Circuit held that plaintiffs successfully alleged a pattern of racketeering activity. The *Morgan* court required the predicate acts to demonstrate "both a continuity and relationship in order to constitute a pattern of racketeering activity." The court ruled that the plaintiffs had satisfied this requirement.

The Seventh Circuit adopted a new legal test to determine the existence of a pattern of racketeering activity. This test has a fact-oriented standard. The "relationship" prong of the *Morgan* test requires the predicate acts to be committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct. The "continuity" prong requires predicate acts to occur at different points in time or involve different victims. *Morgan* at 975. To be sufficiently continuous to constitute a pattern of racketeering activity, the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions. *Id.*

In *Morgan*, the Seventh Circuit enunciated several relevant factors to evaluate continuity. These factors include the number and variety of predicate acts, the length of time over which these acts were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* at 975.

■ In the instant case, this court holds that plaintiff failed to satisfy the continuity prong of the *Morgan* test. This case involves only one victim. Plaintiff only suffered one injury on one occasion, the loss of her interest in Prairie Lake Lodge. Plaintiff only set forth one scheme designed to defraud plaintiff of her property interest in Prairie Lake Lodge. The predi-

cate acts, while multiple, represents one scheme. This scheme necessarily ended after its single accomplishment. *See Marks v. Pannell Kerr Forster*, 811 F.2d 1108, 1112 (7th Cir.1987).

The facts before the *Morgan* court were distinguishable from the facts before the instant court. In particular, the goal of the *Morgan* defendants was not to deprive plaintiff of his property; defendants attempted to generate income via a speculative business venture which secured a bank loan using plaintiff's home as security for the loan. In addition, defendants' fraudulent acts resulted in two separate and distinct corporate formations held two years apart. These separate transactions were repeated over a several year time period resulting in independent, fraudulently-created occurrences. The Supreme Court's *Sedima*'s "continuity plus relationship" requirement was therefore deemed to have been satisfied and plaintiff sufficiently alleged a pattern of racketeering activity. The RICO claim in *Morgan* was therefore allowed.

In contrast, the facts of the instant case do not reveal a pattern of racketeering activity. The multiple predicate acts presented by defendants are a series of acts designed to achieve one goal, the deprivation of plaintiff's property interest in Prairie Lake Lodge. These multiple acts do not take on the character of being separate and distinct schemes in time and place. The acts alleged relate to a single scheme to defraud a single victim and to inflict a single injury. This factual scenario simply fails to satisfy the continuity aspect of the pattern of racketeering activity required by the Supreme Court in *Sedima* and the Seventh Circuit in *Morgan*.

### IV. *Common Law Claims*

In *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the United States Supreme Court permitted nonfederal claims lacking independent federal jurisdiction to be adjudicated with closely related federal claims. Unlike the *Gibbs* Court, this court is confronted with a plaintiff who failed to state a federal claim. Plaintiff's common law

claims lack a jurisdictional foundation in light of this court's decision to dismiss plaintiff's federal claims in Counts I–IV. Accordingly, this court grants defendants' motion to dismiss Counts V and VI.

### V. *Interpleader*

Petitioner Kenneth Votava moves this court to enter an order allowing him to interplead and adjudicate his rights. Votava is the ultimate buyer of Prairie Lake Lodge. This motion is moot in light of this court's decision to dismiss plaintiff's amended complaint.

### CONCLUSION

This court grants defendants' motion to dismiss this case in its entirety. Counts I–IV are based on alleged RICO violations and are time-barred by the two-year statute of limitation. Moreover, Counts I–IV fail to state a RICO claim because plaintiff failed to plead that defendants engaged in a pattern of racketeering activity. In addition, Counts V and VI are dismissed for lack of federal subject matter jurisdiction. Finally, Votava's motion for interpleader is moot in light of this court's dismissal of plaintiff's amended complaint.

IT IS SO ORDERED.