**Thomas E. ZABLOCKI and Jean J. Zablocki, Plaintiffs,**

**v.**

**John D. HUBER, Michael N. Maciejewski, Richard Keskey, and American Title Insurance Company, a Florida corporation, Defendants.**

No. 88–C–1237.

United States District Court, E.D. Wisconsin.

July 27, 1990.

---

Pfannerstill & Camp by Mark M. Camp and Thomas Kreul, Wauwatosa, Wis., for plaintiff.

Halling & Cayo by David B. Halling & Christopher Kolb, Milwaukee, and Vedder, Price, Kaufman & Kramholz by Allan Lapidus and Stanley Block, Chicago, Ill., for defendant American Title Ins. Co.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

Thomas and Jean Zablocki filed this action against the defendants Huber, Maciejewski, Keskey and American Title Insurance Company ("American Title"). Defendants Huber, Maciejewski and Keskey have never appeared in this action. American Title has moved for summary judgment pursuant to Rule 56(b), Federal Rules of Civil Procedure. American Title's motion will be granted in part and denied in part.

Mr. Huber is a former "real estate entrepreneur." Mr. Maciejewski and Mr. Keskey are former management employees in the Milwaukee branch office of American Title, a Florida corporation. Mr. Maciejewski was the branch manager; Mr. Keskey was the chief title officer. This action arose out of a real estate transaction that took place between the plaintiffs and the defendant Huber on October 27, 1982; the plaintiffs exchanged one parcel of real estate they owned for three "owned" by defendant Huber. To the defendants Huber, Maciejewski and Keskey, this transaction was but one of a series of over one hundred allegedly fraudulent real estate transactions in an ongoing enterprise that eventually resulted in their conviction and imprisonment on criminal charges. The plaintiffs allege that American Title, which issued allegedly fraudulent title commitments on two of the real estate parcels involved in the Huber–Zablocki transaction, was part of that enterprise and derived income from the criminal activity.

Four of the five counts in the plaintiffs' complaint are leveled against American Title, and federal jurisdiction was based on the existence of a federal question, see 28 U.S.C. § 1331. Counts II and III allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–64. Count IV alleges a violation of the Wisconsin Organized Crime Control Act ("WOCCA"), secs. 946.80–.87, Stats. Count V alleges willful and wanton misconduct in violation of Wisconsin state law. Jurisdiction over Counts IV and V was based on the principle of pendent jurisdiction, see United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

American Title's summary judgment motion addresses only Counts II and III of the complaint, the RICO claims. American Title asserts that the RICO claims were not timely filed and, thus, are barred by the four-year statute of limitations. See Agency Holding Corp. v. Malley–Duff Associates, Inc., 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987). In the alternative, American Title addressed the merits of the plaintiffs' RICO claims and asserted that each was deficient as a matter of law. American Title chose not to address the merits of either of the state law claims and simply asserted that "[w]hen the federal claims are dismissed before trial, the district court should relinquish jurisdiction of any pendent state claims." Defendants Huber, Maciejewski and Keskey, unlike American Title, have not moved for summary judgment or asserted any defenses— they have not even made an appearance in this action. The plaintiffs' claims against those defendants remain unaffected by this decision (but ripe for a motion for default judgment).

Under Rule 56(b), Federal Rules of Civil Procedure, American Title's motion for summary judgment can be granted only if there is no genuine issue of material fact. Although the question of whether an action is barred by the statute of limitations is ordinarily one of fact, there is no "procedural impediment" to the granting of summary judgment where, as here, there is no dispute as to the material facts. *Gieringer v. Silverman,* 731 F.2d 1272, 1277 (7th Cir.1984). Having examined the material facts, the court finds the RICO claims are amenable to disposition as a matter of law, by summary judgment, based on the statute of limitations.

The action was filed on October 27, 1988. Given the four-year statute of limitations for RICO claims, this means that the plaintiffs' action would be barred if it "accrued" on or before October 27, 1984. The United States Supreme Court has left open the question of when a RICO action should be thought to have "accrued" for statute of limitations purposes. *See generally Agency Holding,* 483 U.S. at 156–57, 107 S.Ct. at 2767. Nor has the seventh circuit court of appeals settled this question. The parties both recognize that district courts in this circuit have split between the so-called "discovery rule" and the "last predicate act" rule.

Under the "discovery rule," a RICO action would accrue when the plaintiffs know or in the exercise of due diligence should have known of facts sufficient to put them on notice of their injury. *See, e.g., Abernathy v. Erickson,* 657 F.Supp. 504, 507–08 (N.D.Ill.1987); *cf. Gieringer v. Silverman,* 731 F.2d 1272, 1277 (7th Cir.1984) (discovery rule in securities fraud action). The second circuit court of appeals has adopted this version of the discovery rule: "[A] plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless of when the RICO violation causing such injury occurred." *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988), *cert. denied sub nom., Soifer v. Bankers Trust Co.,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Under the "last predicate act" rule, the RICO action accrues upon the defendant's completion of the last act that is part of the requisite pattern of racketeering. *See, e.g., Norris v. Wirtz,* 703 F.Supp. 1322 (N.D.Ill. 1989).

■ Most courts that have faced the question have chosen the "discovery rule" over the "last predicate act" rule, however, in this case, the court need not choose one rule over the other. Regardless of what rule is applied, the plaintiffs' RICO claims are barred by the four-year statute of limitations. It is undisputed that defendants Maciejewski and Keskey were at one time employees of American Title. The plaintiffs themselves submitted the following information in their response brief: Keskey, once the chief title officer, left the employ of American Title on September 15, 1983; Maciejewski, the Milwaukee branch manager, left American Title on March 31, 1983. Plaintiffs' Exhibit B. Even if other American Title employees were involved in the allegedly unlawful enterprise, the plaintiffs do not allege that any other American Title management employees directed the enterprise. Thus, it cannot be disputed that the "last predicate act" by American Title-a corporation which can "act" only under the direction of its managers—could not have been committed after September 15, 1983. To be timely under the "last predicate act" rule, this action would have to have been filed by September 15, 1987, well over a year before it was filed.

■ When the court applies the discovery rule, however, the result is the same. The question facing the court is whether undisputed facts show that the plaintiffs knew or should have known of their injury prior to October 27, 1984. The alleged injury is that the properties they had acquired from Mr. Huber were encumbered with other liens, contrary to Mr. Huber's representations and American Title's alleged representations.

It is not disputed that in February 1984 the Zablockis sold one of the parcels "conveyed" to them by Mr. Huber to a third person, Terrence Dimoff. In July 1984, Mr. Dimoff notified Mr. Zablocki that there

was an outstanding mortgage due and owing on the property. Even if it is true that Mr. Zablocki had no knowledge of any fraud at any prior time, it is also undisputed that on August 27, 1984, Mr. Zablocki, a lawyer, filed a third-party summons and complaint on behalf of Mr. Dimoff against Safeco Title Insurance Company. Defendant's Exhibit E. Mr. Zablocki admitted as much in his deposition testimony. Defendant's Exhibit D.

The plaintiffs now argue that they could not have been aware of the Huber's "vast scheme" of fraud by virtue of Mr. Zablocki's knowledge of a single fraudulent title commitment issued by another entity. They interpret the discovery rule too narrowly. The running of the statute of limitations does not await the "leisurely discovery of the full details of the alleged scheme." *Gieringer*, 731 F.2d at 1277, quoting *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir.1970). Nor does the discovery rule permit putative RICO plaintiffs to await detection of some "vast scheme" by which they were injured; the rule contemplates that plaintiffs will exercise due diligence in the detection of their injury.

As of the date Mr. Zablocki ascertained that Mr. Huber had likely perpetrated a fraud upon him (in turn perpetrated upon Mr. Dimoff), Mr. Zablocki was on notice that his injury should have been discovered. Under the discovery rule, as of that date (no later than August 27, 1984), the statute of limitations period began to run. From that time, the Zablockis had four years to investigate the extent of the fraud and the individuals and entities involved and to file their own action. However, the plaintiffs did not file until October 27, 1988, well past their deadline of August 27, 1988.

■ The court finds that the plaintiffs' RICO claims were not timely filed and will grant American Title's motion for summary judgment on those claims based on the statute of limitations. However, the court is unable simply to dismiss the Zablockis' state law claims for the skimpy reasoning American Title offers in its brief. The court disagrees with American Title that it lacks jurisdiction over the "pendent" state

law claims once the federal RICO claims have been dismissed, since the state law claims may have an alternative basis of jurisdiction. The court also notes that the statute of limitations on the plaintiffs' WOCCA claim is six years, *see* sec. 946.87, Stats. Since the original Huber–Zablocki transaction took place on October 27, 1982, *exactly* six years before this action was filed, the WOCCA claim could not be time-barred.

It is ordinarily true that the court should, in the exercise of its discretion, dismiss pendent state law claims when the federal claims to which the state law claims are pendent have been dismissed. *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. However, neither the plaintiffs nor American Title have discussed an alternative basis of federal subject matter jurisdiction over the plaintiffs' state law claims; it may be that those claims are not merely "pendent" to the dismissed RICO claims. The federal courts have jurisdiction over diversity cases—civil actions between citizens of different states where the amount in controversy exceeds the sum of $50,000. 28 U.S.C. § 1332(a)(1). Furthermore, federal courts have an obligation to investigate their jurisdiction on their own initiative, *see Hemmings v. Barian*, 822 F.2d 688, 693 (7th Cir.1987), and a "virtually unflagging obligation" to exercise their jurisdiction when it exists, subject to few narrow exceptions. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

It is true that diversity of citizenship has not been properly alleged by the plaintiffs in their complaint as the basis of federal jurisdiction. It is also true that the "first rule of judicial self-restraint in the federal courts" is that a complaint which fails to allege federal jurisdiction must be dismissed. *Hemmings*, 822 F.2d at 693. However, this case justifies an exception to that rule—with good reason: the plaintiffs originally filed this action in *state* court. American Title—who now seeks dismissal on the basis of lack of federal jurisdiction—removed the action to federal court, invok-

ing federal question jurisdiction under 28 U.S.C. § 1331. It is little wonder that the complaint the plaintiffs filed in state court does not allege federal jurisdiction based upon diversity of citizenship. Therefore, the court declines to hinge the question of its jurisdiction over these state law claims on the fact that American Title chose to invoke federal question instead of federal diversity jurisdiction when it removed the action. The interests of justice require that the plaintiffs be given the opportunity to establish that the requisite facts for federal diversity jurisdiction existed at the time they filed their complaint.

That is not likely to be too difficult. In their complaint, the plaintiffs asserted that they reside in Wisconsin (but not that they are "citizens" of Wisconsin); they seek damages of $424,788.64. Under the diversity jurisdiction statute, 28 U.S.C. § 1332(c)(1), a corporation is deemed a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." American Title has admitted "that it is and was at all times pertinent hereto a Florida corporation with its principal place of business" in Florida. American Title's answer to plaintiff's complaint, ¶ 5.

This is not the end of the diversity jurisdiction inquiry, however. The diversity jurisdiction of the federal courts requires *complete* diversity between *all* of the plaintiffs and *all* of the defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978). Notwithstanding the plaintiffs' failure to seek entry of a default judgment, this action includes three other defendants, Messrs. Huber, Maciejewski, and Keskey, who, like the plaintiffs themselves, may have been Wisconsin citizens (albeit under the supervision of a federal warden) when the complaint was filed.

Ordinarily, the presence of defendants who are citizens of the same state as the plaintiff would defeat complete diversity and thus defeat federal jurisdiction based on diversity of citizenship. However, this circuit has recognized that "the [complete diversity] rule of *Strawbridge v. Curtiss* does not require dismissal of claims against nondiverse defendants if plaintiff has an independent basis of jurisdiction over them." *Kauth v. Hartford Insurance Co.*, 852 F.2d 951, 958 (7th Cir.1988), *quoting* C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3605, at 400 (2d ed. 1984) (footnote omitted); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 381, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959). *See also Hiram Walker & Sons, Inc. v. Kirk Line*, 877 F.2d 1508, 1511–12 (11th Cir.1989); *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 963 (2d Cir.1987); *Brown v. Mine Safety Appliances Co.*, 753 F.2d 393, 395 (5th Cir.1985). The court of appeals for the seventh circuit pointed out the reason for this exception to the complete diversity rule: to obviate the "anomalous result of not allowing a plaintiff to do in one federal suit what he would be entitled to do in two separate federal suits." *Kauth*, 852 F.2d at 959, *quoting Baker v. J.C. Penney Co.*, 496 F.Supp. 922, 924 (N.D.Ga.1980).

The exception is applicable here, and if the plaintiffs can establish federal diversity jurisdiction between themselves and American Title under 28 U.S.C. § 1332(a)(1), it is irrelevant whether defendants Huber, Maciejewski and Keskey are non-diverse. This courts' jurisdiction over the claims against those three defendants is independently based upon the existence of a federal question, *see* 28 U.S.C. § 1331. Since that independent basis for federal jurisdiction—the presence of a federal question—is undisputed, under *Kauth*, federal diversity jurisdiction over the plaintiffs' state law claims against American Title, if it can be established, would not be defeated by the presence of the other defendants in the same action.

The plaintiffs will be granted leave to submit to the court an affidavit establishing that federal jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332 existed at the time they filed their state court complaint. *Cf. Hemmings*, 822 F.2d at 693 (sanctioning this procedure as "the proper course" where this type of jurisdictional question is raised). A hear-

ing on this jurisdictional issue will be held at the pre-trial conference presently scheduled for August 1, 1990, at 9:30 a.m. At the hearing, the parties will each have ten minutes to offer their arguments. The pre-trial conference will follow the hearing, as originally scheduled.

Therefore, IT IS ORDERED that defendant American Title's motion for summary judgment be and hereby is granted as to Counts II and III and denied as to the remaining counts.

IT IS ALSO ORDERED that Counts II and III of the plaintiffs' complaint be and hereby are dismissed against defendant American Title.

IT IS FURTHER ORDERED that a hearing on the issue of subject matter jurisdiction be and hereby is scheduled for August 1, 1990, at 9:30 a.m.; the previously scheduled pre-trial conference will follow immediately afterward.